**UNITED STATES of America**

v.

**Martin H. TROWERY, Appellant, and Pernell E. Green, Jr.**

**No. 75–1828.**

United States Court of Appeals, Third Circuit.

Argued March 11, 1976.

Decided Sept. 23, 1976.

Thomas A. Livingston, Dennis J. Clark, Pittsburgh, Pa., for appellant.

Blair A. Griffith, U. S. Atty., Judith K. Giltenboth, Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Before VAN DUSEN and WEIS, Circuit Judges, and STERN, District Judge.

## OPINION OF THE COURT

PER CURIAM:

Appellant Martin Trowery appeals from a judgment of conviction entered after jury trial on a one-count indictment charging him with the distribution of heroin. The Government proved in its direct case that another jury had convicted Trowery of similar offenses some months before, and introduced certain out of court statements by an absent co-defendant. Finding no reversible error, we affirm.

Appellant, a Pittsburgh resident, and one Richard Golden were arrested at San Francisco International Airport on September 11, 1974 upon their arrival from Japan. In appellant's possession were two suitcases containing 1,150 grams of 94% pure heroin. Both men were charged in an indictment returned in the Northern District of California on September 18, 1974. Appellant was named in three of the five counts. One count charged him with the importation of heroin, another with possession of heroin with intent to distribute, and the last with conspiracy. The objects of the conspiracy were alleged to be the importation, possession with intent to distribute, and distribution of all of the heroin found in the possession of both men. After trial by jury, appellant was convicted on all counts on December 5, 1974, and sentenced to concurrent terms of 15 years imprisonment on each count. The court also imposed a special parole term of 20 years on each count and fined appellant $10,000 on the importation count.

One day before the jury in the Northern District of California rendered its verdict, appellant and one Pernell Green were indicted in the Western District of Pennsylvania for the distribution of heroin. We review the conviction resulting from that indictment.[1]

At trial in Pennsylvania, the Government presented the testimony of Burton Lund, Robert Maffett and Robert Dreisbach, agents of the Drug Enforcement Administration. They testified that on September 22, 1974, 11 days after Trowery had been arrested in San Francisco, Lund was working undercover in Pittsburgh and was introduced to one Pernell Green by an informant. Green told Lund that he had a heroin connection, that his "brother" was involved in narcotics, and that he could procure heroin which Lund could resell in Philadelphia. In an apparent effort to convince Lund that the heroin would be of high quality, Green explained that his "brother" had been arrested coming into San Francisco with two kilos of heroin. According to Green, another white man had successfully passed through customs with six pounds of heroin, and Lund's "buy" would be from that six pounds. Green then told the agent that the "brother" to whom he had referred was Martin Trowery.

On September 25, 1974, a sale of heroin from Green to Lund was planned to take place at a shopping center that evening. Surveillance agents saw Green enter appellant's residence at about 4:20 P.M. Appellant entered the house shortly after Green. While the two were together in the house, Lund received a telephone call from Green scheduling the heroin transaction for 5:30 P.M. They met and the sale was made. Appellant was not seen in the vicinity where the purchase took place.

A second sale was arranged for the evening of October 16, 1974 at the same location. On this occasion surveillance agents

---

1. The California indictment did not include a charge of distribution. That crime, and that crime alone, was charged in the Pennsylvania indictment.

observed appellant across the parking lot from the location where Green and Lund were to meet. Green and appellant were seen to enter a hardware store for a few minutes, have a conversation inside, and then emerge together. Appellant was observed handing Green an object. Lund arrived, and Green pointed toward Lund, while looking at appellant. Appellant nodded his head, and Green then approached Lund. Appellant went to a green truck parked in the shopping center parking area, and entered the cab. He adjusted the sideview mirror and angled it toward Green and Lund. Green concluded his transaction with Lund, during which he told Lund that further transactions might be possible "because his brother needed money for lawyer's fees for his bust in California." (App. 57). Green then ran in a bent-over position and hurriedly got into the truck in which appellant had been waiting. The truck soon left the parking lot.

On October 21, 1974, Green telephoned Lund to ask to borrow money. During the course of the conversation, Green told Lund that "my brother Martin" had traveled with Green to and from the shopping center on October 16 and had seen Lund.

The final contact between Green and Lund was on October 22, 1974, when Green telephoned again. Another narcotics buy was scheduled for that night but Green failed to appear at the rendezvous. Green and appellant were arrested on October 30, 1974. At the time of trial Green was a fugitive.

The Government's direct case closed with the introduction into evidence, over the defendant's objection, of the judgment and commitment order establishing the California conviction. The court also permitted the introduction of the California indictment, although at the defendant's request it did not allow that document to be shown to the jury. The evidence of Green's statements about Trowery and the introduction of Trowery's California conviction were significant factors in the outcome of the case, and appellant challenges the admission of both pieces of evidence.

■ The trial court admitted Lund's testimony repeating Green's statements as being within the "concert of action" exception to the hearsay rule. In effect, the court treated Green's statements as those of a co-conspirator even though there was no conspiracy charged in the indictment. The absence of a conspiracy count, however, is without legal significance in determining whether Green's statements were admissible against Trowery. The Government need only prove a conspiracy in fact between Green and Trowery to make the words of one, spoken in furtherance of some joint purpose, the words of the other as well. *United States v. Alsondo*, 486 F.2d 1339 (2d Cir. 1973), *rev'd on other grounds sub nom. United States v. Feola*, 420 U.S. 671, 95 S.Ct. 1255 (1975); *United States v. Talbot*, 470 F.2d 158 (6th Cir. 1972); *United States v. Mendoza*, 473 F.2d 692 (5th Cir. 1972).

■ The distinction should be noted between "conspiracy" as a crime and the co-conspirator exception to the hearsay rule. Conspiracy as a crime comprehends more than mere joint enterprise. It also includes other elements, such as a meeting of the minds, criminal intent and, where required by statute, an overt act. When these elements are established, the crime of conspiracy is proved.

■ The co-conspirator exception to the hearsay rule, on the other hand, is merely a rule of evidence founded, to some extent, on concepts of agency law. It may be applied in both civil and criminal cases. Federal Rule of Evidence 801(d)(2)(E); IV Wigmore on Evidence § 1079 (Chadbourn rev. 1972). (Cf. 4 Weinstein's Evidence ¶ 801(d)(2)(E) [01], at 801–141 (1975)). Its rationale is the common sense appreciation that a person who has authorized another to speak or to act to some joint end will be held responsible for what is later said or done by his agent, whether in his presence or not.

■ When the co-conspirator rule of evidence is invoked, either in civil or criminal proceedings, its applicability is for the

court to decide as a question of the competence of evidence. *United States v. Nixon,* 418 U.S. 683, 701 n.14, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *United States v. Rodrigues,* 491 F.2d 663 (3d Cir. 1974); *United States v. Bey,* 437 F.2d 188 (3d Cir. 1971); *Carbo v. United States,* 314 F.2d 718, 737 (9th Cir. 1963), *cert. denied,* 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498 (1964); *United States v. Dennis,* 183 F.2d 201 (2d Cir. 1950), *aff'd,* 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951). To determine whether the evidence is competent as against the nondeclarant, the trial judge determines whether it has been proved, by a preponderance of the evidence, that a joint undertaking existed at the time of the statement or action. *United States v. Geaney,* 417 F.2d 1116 (2d Cir. 1969), *cert. denied,* 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970). No lesser burden of proof would be satisfactory since the defendant does not have the opportunity to cross-examine the declarant. If the statement is admitted, the evidence is competent as against all who are joint venturers. *See* 1 Weinstein's Evidence ¶ 104[5].

■ The common enterprise cannot be established solely by the words of the self-proclaimed participant, since "[o]therwise, hearsay would lift itself by its own bootstraps to the level of competent evidence," *Glasser v. United States,* 315 U.S. 60, 75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942). There must be a clear preponderance of evidence independent of the hearsay statement to satisfy the judge that the declarant was a participant, *United States v. Bey,* 437 F.2d at 191.

■ Since the quantum and nature of evidence required for the application of the co-conspirator exception differ from that required for conviction of the crime of conspiracy, "[t]he trial judge's finding on admissibility in no way restricts the jury's inquiry into guilt or innocence," where the crime of conspiracy is charged in the indictment, *Carbo v. United States,* 314 F.2d at 737. It follows, therefore, that the absence of a conspiracy count has no bearing on the court's determination of the competence of co-conspirator evidence:

"In *United States v. Pugliese,* 2 Cir., 153 F.2d 497, 500, the charge was against the husband and wife as joint possessors of illegal liquor; and the husband was convicted and the wife was acquitted. The question arose as to the competence of the wife's declaration against the husband, and we held that they were competent; yet obviously, if the jury used the declarations against the husband they must have done so without being satisfied beyond a doubt that she possessed the liquor in concert with him. Of course, they may have found the evidence against him enough without recourse to the declaration, but they were not so instructed. Instead we said: 'The admissibility of the wife's declarations in the case at bar was for the judge, and the fact that the jury later acquitted her was irrelevant. The issue before him was altogether different from that before them: he had only to decide whether, if the jury chose to believe the witnesses, Pugliesi and his wife were engaged in a joint undertaking; they had to decide whether they believed the witnesses beyond a doubt.' No doubt, this conclusion permits the jury to act upon hearsay, because they may be satisfied of the 'joint undertaking' only because of the declaration; but it often happens that hearsay is competent, and this is the only practicable way to deal with the question." *United States v. Dennis,* 183 F.2d at 231.

*See also United States v. Alsondo, supra.*

■ If the evidence is admitted, it then goes to the jury without special instruction. The issue of concert of action, as it applies to the question of admissibility of evidence, is determined by the trial judge as a matter of law, rather than being submitted to the jury. As Judge Hand observed in *United States v. Dennis*:

"[W]e think that the better doctrine is that the judge is always to decide, as concededly he generally must, any issues of fact on which the competence of evidence depends, and that, if he decides it to be competent, he is to leave it to the

**628**

jury to use like any other evidence, without instructing them to consider it as proof only after they too have decided a preliminary issue which alone makes it competent. Indeed, it is a practical impossibility for laymen, and for that matter for most judges, to keep their minds in the isolated compartments that this requires." 183 F.2d at 231.

■ Defendant contends that there was reversible error in the admission into evidence of his California conviction and commitment order. It was the defense that first brought the matter before the jury. The fact of defendant's conviction and the length of the sentence he received were conveyed to the jury during the course of his opening statement before any evidence had been introduced. Before this reference, no mention whatsoever of any prior conviction had been made. We find no error in this subsequent receipt of evidence concerning the nature and circumstance of the California conviction, both in view of its prior introduction by the defendant and in view of its relevance to the issues at trial. *See* Federal Rule of Evidence 404(b); *United States v. Hines,* 470 F.2d 225 (3d Cir. 1972), *cert. denied,* 410 U.S. 968, 93 S.Ct. 1452, 35 L.Ed.2d 703 (1973); *United States v. Stirone,* 262 F.2d 571, 576 (3d Cir. 1958), *rev'd on other grounds,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

Defendant also assigns as error:
1. The sufficiency of the evidence as to Count 2;
2. Inflammatory remarks by Government witnesses;
3. Admission of improper evidence;
4. Absence of certain grand jury transcripts;
5. Denial of rebuttal argument;
6. Reading of certain testimony to the jury at their request during deliberations; and
7. Refusal of the district judge to charge on accomplice testimony in accordance with *Cool v. United States,* 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972).

Having reviewed these contentions, we find them without merit.

The judgment of the district court will be affirmed.