**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Guillermo GIL, Defendant-Appellant.**

**No. 78–2360.**

United States Court of Appeals,
Seventh Circuit.

Argued May 24, 1979.

Decided Aug. 31, 1979.

Gerald F. Murray, Chicago, Ill., for defendant-appellant.

Thomas P. Sullivan, U. S. Atty., Gerald J. Rafferty, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Circuit Judge, PELL, Circuit Judge, and PECK, Senior Circuit Judge.*

PECK, Senior Circuit Judge.

Defendant-appellant Guillermo Gil was indicted along with his brother-in-law Oscar Villegas, and charged with distribution of heroin. The defendants were tried together in a bench trial, and Gil was found guilty. His codefendant Villegas was found not guilty by reason of entrapment on the part of the Government. The trial judge specifically relied upon several statements made by Villegas to the undercover investigators, implicating Gil, in finding Gil guilty. On appeal, Gil presents a sophisticated logical argument, urging that Villegas's statements were not properly admitted against him. Rule 801(d)(2)(E) excludes the statements of coconspirators from the general barrier against the use of hearsay, but the existence of a conspiracy is an obvious necessary precondition before the Rule comes into play. Gil contends that Villegas's entrapment acquittal made the existence of a conspiracy a legal impossibility, and thus the use of the evidentiary rule against him was improper.

The defendant Gil was the owner and operator of a sandwich truck, making rounds of the city in the early morning selling coffee and doughnuts, and then again at noon with sandwiches and drinks. According to the evidence, Villegas was approached repeatedly by a Government informant who attempted to persuade Villegas to sell him heroin. Finally, Villegas agreed to try to get some for the agent, and to meet him at a corner in Chicago, near Gil's home. The area was placed under surveillance, and Gil and Villegas were seen together in back of Gil's home. A short time later, Villegas met with the informer and told him to come back that night.

That evening, Gil and Villegas were observed together at a nearby shopping center. Villegas made several trips back and forth between Gil and the informant, who was waiting at the corner, and Gil was observed making telephone calls from a phone booth. A dispute arose between Villegas and the informant, however, and no sale occurred.

A week later, another transaction was set up between Villegas and the informant. That day, Gil returned home after making his rounds, parked his truck in the alley near his home, and began to clean the truck according to his usual routine. Villegas arrived, and began talking to Gil. A few minutes later the informant and an undercover agent arrived at a nearby corner. Villegas approached the agent, and began negotiations concerning the sale. When asked about the price of the narcotics, Villegas said he would have to ask his "partner" and walked over to where Gil was working on the truck. Villegas also told the agent that the "heroin was in the truck." The

* Honorable John W. Peck, United States Court of Appeals for the Sixth Circuit, sitting by designation.

agent then left, telling Villegas he would be back.

Villegas returned to talk to Gil, and, according to the surveillance officers who were watching the area, Gil took a brown paper bag from his truck and gave it to Villegas. When the agent returned, the sale was finally completed, with Villegas giving the agent a brown paper bag, similar to the one which Gil had been seen to give Villegas earlier, which proved to contain heroin.

As mentioned earlier, Villegas was acquitted on the defense of entrapment. Gil was convicted, with the district judge expressly stating that he was relying on Villegas's statements to the undercover agent about his "partner" and the heroin being on the truck, admitted pursuant to the coconspirator exception to the hearsay rule, in addition to the other circumstantial evidence suggesting Gil's guilt.

Rule 801(d)(2)(E), Fed.R.Evid. provides: A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

The Rule classifies such a statement as an "admission," and, except for its designation of coconspirators' statements as "not hearsay," is a codification of the common law rule admitting such statements as an exception to the hearsay rule. However, Rule 104, governing the determination of preliminary questions of admissibility, has been held to affect both the order and burden of proof concerning the underlying requirements of Rule 801(d)(2)(E). The rule in the Seventh Circuit was clarified in *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), which established that the question of admissibility is solely for the judge and that statements in a criminal case are to be admitted against the defendant once the Government has established by a preponderance of the evidence, independent of the statements themselves, that a conspiracy existed, that the defendant was a member of the conspiracy, and that the statement was made during the course of and in fur-

therance of the conspiracy. The trial judge in this case expressly recognized and applied the *Santiago* standard in admitting the statements made by Villegas against Gil.

The defendant argues, however, that because of an unusual combination of circumstances in this case, the defendant is entitled to a new trial without the use of Villegas's statements against him. Those circumstances, he contends, are the fact that this case involved an alleged criminal joint venture comprised of only two individuals, the use of statements of one to convict the other pursuant to the coconspirator exception to the definition of hearsay, and the acquittal of the declarant because of entrapment on the part of the Government. The rationale of the defendant's argument is that the entrapment acquittal means that the declarant committed no act which is a crime under the narcotics statutes, and therefore cannot be considered to have been a member of a joint venture to commit those acts. *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), reaffirmed the traditional approach to entrapment, ruling that a successful entrapment defense negates the existence of crime, because the criminal statute is interpreted to have no application to an act committed at the Government's instigation. The defendant next argues that since one member of the alleged joint venture has established that his conduct was not criminal, applying the substantive law of conspiracy to the effect that it is impossible to have a conspiracy involving only one person, as a matter of law there is no conspiracy to supply the necessary predicate to admission of Villegas's statements pursuant to Rule 801(d)(2)(E). Therefore, he contends, the statements were improperly admitted, and he has been convicted in substantial part because of the out-of-court hearsay statements of a declarant who was not under oath and has not been subjected to cross-examination.

The logical structure of this argument falls, however, because of at least one internal fallacy. It equates "conspiracy" as

a concept of substantive criminal law, governing who may be punished for which acts, with "conspiracy" as part of an evidentiary principle, and burdens the latter with all of the theoretical limitations and formal requirements of the former. The two are not the same, though it is likely that any provable criminal conspiracy will satisfy the requirements of the evidentiary rule. Nor have the cases in which the issue has been presented treated them as the same. As the Third Circuit pointed out in *United States v. Trowery*, 542 F.2d 623 (3d Cir. 1976):

> The distinction should be noted between "conspiracy" as a crime and the co-conspirator exception to the hearsay rule. Conspiracy as a crime comprehends more than mere joint enterprise. It also includes other elements, such as a meeting of the minds, criminal intent and, where required by statute, an overt act. When these elements are established, the crime of conspiracy is proved.

> The co-conspirator exception to the hearsay rule, on the other hand, is merely a rule of evidence founded, to some extent, on concepts of agency law. It may be applied in both civil and criminal cases. . . . Its rationale is the common sense appreciation that a person who has authorized another to speak or to act to some joint end will be held responsible for what is later said or done by his agent, whether in his presence or not.

*Id.*, at 626. Thus, it is well-established that the crime of conspiracy need not be charged (as it was not in this case) in order to invoke the coconspirator exception to the hearsay rule to admit out-of-court statements. In such cases, the courts sometimes drop the language of conspiracy altogether, calling the exception a "joint venture" exception, *United States v. Swainson*, 548 F.2d 657 (6th Cir.1977), or a "concert of action" exception, *United States v. Trowery, supra,* 542 F.2d at 626. Furthermore, the differences between what must be proved to invoke the hearsay exception and what must be proved in order to convict a person of the crime of conspiracy, as well as the difference in burden of proof, mean that neither collateral estoppel nor res judicata automatically bars the use of statements by a person who has been acquitted of the crime of conspiracy, *United States v. Cravero*, 545 F.2d 406, 419 (5th Cir.1976), *cert. denied*, 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977), though an acquittal might be relevant and persuasive in the determination of whether the Government has demonstrated the requisite criminal joint venture.

The evidentiary principle, as noted by the Third Circuit in *Trowery*, is a limited application of agency principles, viewing a conspiracy as a "partnership in crime." It is justified in part because of the assurances of accuracy traditionally associated with statements against interest and the community of interest among the conspirators. *United States v. Papia*, 560 F.2d 827 (7th Cir.1977). It has also been candidly proposed by commentators, and implicitly acknowledged by the Advisory Committee for the Federal Rules of Evidence, that the exception is largely a result of necessity, since it is most often invoked in conspiracy cases in which the proof would otherwise be very difficult and the evidence largely circumstantial. Levie, "Hearsay and Conspiracy," 52 Mich.L.Rev. 920, 989 (1959), Advisory Committee's Note to Rule 801, quoted in 4 Weinstein's Evidence at 801–36. The agency limitations providing that the statement must have been made "during the course of" and "in furtherance of" the conspiracy are considered to be useful devices for the protection of defendants from the danger of unfairness posed by the Rule. "The purpose of the rule is 'to protect the accused against [the] idle chatter of criminal partners as well as inadvertently misreported and deliberately fabricated evidence.' " *United States v. Dorn*, 561 F.2d 1252 (7th Cir.1977).

The substantive criminal law of conspiracy, though it obviously overlaps in many areas, simply has no application to this evidentiary principle. Thus, once the existence of a joint venture for an illegal purpose, or for a legal purpose using illegal means, and a statement made in the course

of and in furtherance of that venture have been demonstrated by a preponderance of the evidence, it makes no difference whether the declarant or any other "partner in crime" could actually be tried, convicted and punished for the crime of conspiracy.

■ This case provides us with a particularly good demonstration of this difference in meaning. The entrapment of Villegas meant that he had no predisposition to commit the acts charged. Rather, his intent to sell narcotics originated with the law enforcement officers, and he was persuaded by them to violate the law. Under these circumstances, it is presumed by the courts that the legislative intent was that the statute would not cover the conduct, and thus Villegas was not "guilty" of the crime charged. This result may have some effect on whether Gil, Villegas's "partner in crime," could be tried for the substantive crime of conspiracy, but it has no relevance to the rationale behind Rule 801(d)(2)(E). The Government succeeded in showing by a clear preponderance of the evidence that Gil and Villegas agreed together to sell narcotics, and therefore Villegas's statements, made during the pendency of and in furtherance of that agreement, are admissible against Gil. The subsequent determination that Villegas could not be punished for his part in the agreement, because of the conduct of the Government in inducing his participation in the crime, does not affect the determination of admissibility.

■ We likewise reject the defendant's contention that as a matter of public policy we should exclude statements by coconspirators who have been entrapped, even though those statements implicate others who have not been affected by the Government's misconduct. He urges that the Government should not be permitted to benefit in any way from its own improper conduct. We believe that the Supreme Court has made it clear that a defendant will not be permitted to invoke an exclusionary rule based on the Government's violation of the rights of another, *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Entrapment is a personal defense. In this case,

Villegas was the object and victim of the Government's misconduct, which did not affect Gil at all. We hold that public policy does not demand a special exclusionary rule be applied to benefit Gil.

The conviction is affirmed.