UNITED STATES of America,
Plaintiff-Appellee,

v.

Francis B. KENDALL,
Defendant-Appellant.

No. 81–1138.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 17, 1981.

Decided Nov. 23, 1981.

As Amended Dec. 24, 1981.

Rehearing and Rehearing En Banc
Denied Dec. 28, 1981.

Certiorari Denied March 22, 1982.
See 102 S.Ct. 1719.

David W. Mernitz, Doninger & Mernitz, Indianapolis, Ind., for plaintiff-appellee.

Kennard P. Foster, Asst. U. S. Atty., Indianapolis, Ind., for defendant-appellant.

Before PELL and CUDAHY, Circuit Judges, FAIRCHILD, Senior Circuit Judge.

PELL, Circuit Judge.

The appellant, Francis B. Kendall, was convicted following a jury trial on three counts of violating the Hobbs Act, 18 U.S.C. § 1951 (1976). The first count alleged a conspiracy to obstruct interstate commerce

by extortion. Counts 2 and 3 alleged extortions on March 2, 1979, and March 7, 1979, from the Indiana Surety Agents Association (ISAA). The principal issue on appeal is whether the trial court committed prejudicial error when it admitted evidence concerning conversations among members of the ISAA pursuant to rule 801(d)(2)(E) of the Federal Rules of Evidence.[1]

Kendall raises three additional issues on appeal. First, he contends that the trial court abused its discretion in denying his motion for a bill of particulars identifying the known but unnamed co-conspirators. Second, the appellant contends that the evidence demonstrated the possibility of multiple conspiracies and that the judge below committed prejudicial error by not instructing the jury accordingly. Finally, Kendall maintains that the trial court committed prejudicial error in denying his motions for severance.

I. Facts

The ISAA was an organization of bail bondsmen in the State of Indiana. Its principal purpose was to lobby for legislation favorable to the bail bond industry. In late 1978, the ISAA was concerned about the possible enactment of legislation allowing a defendant to post ten percent of the amount of his bond with the court rather than requiring him to secure a corporate surety bond for the full amount of the bail. The pertinent legislation was embodied in Senate Bill 155, Senate Bill 256, and House Bill 1490, then pending before the First Regular Session of the 101st Indiana General Assembly.

Following the recommendation of an ISAA member, the ISAA president, Bruce Harris, got in touch with Francis Kendall in early 1979. Kendall subsequently indicated that his corporation, Capitol Business Systems (Capitol), would be willing to act as a "legislative director" for the ISAA for a fee of $12,000, payable at $1,000 per month. Capitol was to gather information useful in lobbying against the pending legislation. Kendall said that he was very close to the legislature. He introduced Harris to his business associate, John Cline. Cline was to handle the ISAA account because Kendall planned to be out of town for much of the legislative session. Harris paid Cline a $1,000 retainer in early February, 1979, although he declined to sign a written contract. Cline made various contacts on behalf of the ISAA after February 6, 1979. The contacts, which included several conversations with Martin K. Edwards, President Pro Tempore of the Indiana Senate, were noted in Capitol's files, to which Kendall had access.

House Bill 1490 passed the House on January 31, 1979.[2] Cline testified that on March 1, 1979, Edwards phoned him and detailed a payment schedule "to get [House Bill 1490] handled." Edwards wanted $3,000 immediately, $5,000 when the bill came out of committee, $4,000 when it reached the Senate floor, and $15,000 when it went to the House.

Cline made contact with Harris. Various members of the ISAA delivered checks to Harris. On March 2, 1979, Cline delivered to Edwards the $3,000 that had been collected by Harris. On March 5, 1979, the officers of the ISAA met and agreed to raise funds and to make contributions themselves for the purpose of paying Edwards. This meeting was tape-recorded by Harris.

1. Federal Rule of Evidence 801(d)(2)(E) provides:

(d) Statements which are not hearsay. A statement is not hearsay if—

. . . .

(2) Admission by party-opponent. The statement is offered against a party and is ... (E) a statement by a co-conspirator of a party during the course and in furtherance of conspiracy.

Except for its designation of co-conspirators' statements as "not hearsay," the rule codifies the common law co-conspirator exception to the hearsay rule. *United States v. Gil*, 604 F.2d 546, 548 (7th Cir. 1979).

2. Senate Bills 155 and 256 had been referred to the Senate Judiciary Committee. Although the bills were heard by a subcommittee, the committee chairman declined to give the bills a hearing in the full committee.

The bill came out of committee on March 6, 1979. It had been amended to require any cash deposit for bail to be equal to the full amount of the bail. On March 7, 1979, Cline delivered to Edwards the $5,000 that Harris had raised. Edwards returned $2,000 to Cline and, within the next two or three days, Cline delivered half of the $2,000 to Kendall. Cline told Kendall "how much was there and what it was for and where it came from."

On March 16, 1979, House Bill 1490 was amended so as to delete the amendment added in committee that was supported by the ISAA. The bill passed the Senate in its original form.

On March 26, 1979, officers of the ISAA met with Kendall and Cline at the offices of Capitol. The discussion included: (1) whether Capitol should be employed pursuant to a $1,000 per month contract to help with future legislative efforts; (2) whether $5,000 should be paid to Edwards to secure the appointment of a favorable study commission on bail bonding which might recommend legislation to the next session of the legislature; and (3) a general discussion of the money already paid to Edwards. The members decided not to sign the contract nor to make other payments.

Cline's next contact with Harris was on May 10, 1979, to discuss appointments to the study commission; however, the ISAA did not take any further action.

The original indictment charged Kendall and Cline each with three counts of violating the Hobbs Act, 18 U.S.C. § 1951 (1976). Edwards was charged on the same three counts as well as four additional counts.[3]

Kendall filed a motion for a bill of particulars, seeking disclosure, *inter alia*, of the names of conspirators known to the grand jury but unnamed in the indictment. He also filed a motion for relief from prejudicial joinder. The Government responded to both motions on September 3, 1980. In response to the motion for a bill of particulars, the Government detailed materials which had been made available to the defendants pursuant to rule 16 of the Federal Rules of Criminal Procedure. The tape recording and transcript of the March 5, 1979 meeting were among the materials provided, the latter totalling over three hundred pages.

On October 13, 1980, the trial court denied the request for a bill of particulars. Kendall's motion for reconsideration was similarly denied on October 30, 1980. On October 16, 1980, the court granted the Government's motion to dismiss all counts of the indictment as to Cline with prejudice. The court thereupon found Kendall's motion for severance to be moot.

The Grand Jury returned a superseding indictment on November 6, 1980. Six of the seven counts contained in the first indictment were repeated;[4] additionally, Edwards was charged with three counts of violating 26 U.S.C. § 7206(1) (1976). Kendall's alternative motion for severance as to these three counts was granted the next day; however, his renewed motion to sever entirely his trial from that of Edwards was denied.

## II. Federal Rule of Evidence 801(d)(2)(E)

Appellant Kendall contends that the trial court committed prejudicial error in admitting as substantive evidence of the conspiracy testimony about conversations among ISAA members. In particular, Kendall challenges the admission of a tape recording of the March 5, 1979 meeting, testimony by Delbert First concerning statements made by his brother, Robert First, and testimony by Harris as to a conversation he had with Cline on May 10, 1979. The appellant argues that it was legally impossible for the ISAA members to be co-conspirators under the Hobbs Act, 18 U.S.C. § 1951

---

**3.** The four additional counts against Edwards charged violations of 18 U.S.C. §§ 1623, 1505, & 1503.

**4.** Count 7 of the original indictment, charging Edwards with attempting to obstruct an investigation by the F.B.I. in violation of 18 U.S.C. § 1505 (1976), had been dismissed by the court on October 13, 1980, on motion of the defendant Edwards.

(1976), and therefore it was error for the court to admit the testimony pursuant to rule 801(d)(2)(E) of the Federal Rules of Evidence. Additionally, Kendall argues that testimony by Delbert First did not concern statements made in furtherance of the conspiracy and that the May 10, 1979 conversation between Cline and Harris occurred after the conspiracy had ended.

## A. Legal Impossibility

The appellant reasons as follows: (1) the ISAA was the victim of the conspiracy;[5] (2) the intent and purpose of the Hobbs Act, 18 U.S.C. § 1951 (1976), is to protect the victims of extortion regardless of whether they are "willing" victims; (3) because the ISAA was victim to the extortion, its members could not have been charged as Hobbs Act co-conspirators; and (4) therefore, conversations among ISAA members should not have been admitted as substantive evidence pursuant to Federal Rule of Evidence 801(d)(2)(E).

Kendall relies for support on cases decided under statutes other than the Hobbs Act which have held that the victim of the crime charged cannot be deemed a co-conspirator under the pertinent statute. *See United States v. Nasser*, 476 F.2d 1111 (7th Cir. 1973) (conspiracy to violate a conflict of interest statute, charged under 18 U.S.C. § 207(a) (1976)); *Nigro v. United States*, 117 F.2d 624 (8th Cir. 1941) (conspiracy to sell, barter and exchange narcotics, charged under 26 U.S.C. § 1044 (1976); *Gebardi v. United States*, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206 (1932) (conspiracy in violation of the Mann Act, now codified at 18 U.S.C. §§ 2421–2424 (1976)).

We need not decide, however, whether the ISAA members and directors might have been charged with a Hobbs Act violation. This court has previously held that "conspiracy" as an evidentiary concept, embodied in rule 801(d)(2)(E), and "conspiracy" as a concept of substantive criminal law are not coterminous. *United States v. Gil*, 604

F.2d 546, 549–50 (7th Cir. 1979); *accord, United States v. Trowery*, 542 F.2d 623, 626 (3d Cir. 1976) (per curiam), *cert. denied*, 429 U.S. 1104, 97 S.Ct. 1132, 51 L.Ed.2d 555 (1977). To distinguish the two concepts, courts have referred to the evidentiary principle as a "joint venture" exception, *United States v. Swainson*, 548 F.2d 657, 660 (6th Cir. 1977), *cert. denied*, 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255, or a "concert of action" exception, *United States v. Trowery*, 542 F.2d 623, 627 (3d Cir. 1976) (per curiam), *cert. denied*, 429 U.S. 1104, 97 S.Ct. 1132, 51 L.Ed.2d 555 (1977).

In *Gil*, defendants Villegas and Gil were charged with distribution of heroin. Neither was charged with conspiracy. At trial, the district court judge found that the Government had established by a preponderance of independent evidence that a conspiracy existed, that Gil was a member of the conspiracy, and that various statements by Villegas were made during the course and in furtherance of the conspiracy. After thus properly applying the standard articulated by this court in *United States v. Santiago*, 582 F.2d 1128, 1134 (7th Cir. 1978), the trial judge admitted Villegas' statements against Gil, pursuant to rule 801(d)(2)(E).

Villegas was acquitted of the narcotics charge because he proved entrapment by the Government. A successful entrapment defense negates the existence of crime because the required mental state is absent when the criminal act is committed at the instigation of the Government. *Hampton v. United States*, 425 U.S. 484, 489, 96 S.Ct. 1646, 1649, 48 L.Ed.2d 113 (1976). On appeal, Gil argued that he was entitled to a new trial without the use of Villegas' statements against him because no conspiracy could have existed. Because Villegas had been found innocent, only Gil could have been a conspirator; however, a conspiracy involving only one person is a legal impossibility.

---

5. The indictment named as victims of the conspiracy the ISAA, its officers, members and

agents.

After discussing the distinction between the substantive crime of conspiracy and rule 801(d)(2)(E), this court noted that Villegas' acquittal might "have some effect on whether Gil, Villegas' 'partner in crime,' could be tried for the substantive crime of conspiracy, but it has no relevance to the rationale behind Rule 801(d)(2)(E)." 604 F.2d at 550. The conviction of Gil was affirmed.

■ *Gil* establishes that the appellate court need not overturn a conviction arguably based in part on evidence introduced pursuant to the joint venture exception even if, at the time of appeal, it appears that any substantive charge of conspiracy might be a legal impossibility. In the instant case, appellant Kendall argues that it would be legally impossible to charge the ISAA directors, whose conversations were admitted pursuant to the co-conspirator exception, with conspiracy under the Hobbs Act, 18 U.S.C. § 1951 (1976). In light of *Gil*, we are convinced that, even if such a substantive conspiracy charge were a legal impossibility, the trial court's reliance on rule 801(d)(2)(E) does not necessarily require us to overturn the conviction.

■ Several well-established judicial rules delineating the limits of the joint venture exception, besides the holding in *Gil*, are pertinent to the admissibility of the challenged declarations. An out-of-court statement is admissible pursuant to rule 801(d)(2)(E) if the judge finds by a preponderance of the evidence "that the declarant and defendant were members of a conspiracy at the time the hearsay statement was made, and that the statement was in furtherance of the conspiracy." *United States v. Santiago*, 528 F.2d 1128, 1134 (7th Cir. 1978); *accord, United States v. Medina-Herrera*, 606 F.2d 770, 773 (7th Cir. 1979), cert. denied, 446 U.S. 964, 100 S.Ct. 2939, 64 L.Ed.2d 822 (1980). If this standard is met, such an out-of-court statement is admissible even if there is no conspiracy charged.[6] The general rule requires only that the conspiracy introduced into evidence by the Government be "factually intertwined" with the offense for which the defendant is being tried. *United States v. Lyles*, 593 F.2d 182, 194 (2d Cir. 1979), cert. denied, 444 U.S. 847, 100 S.Ct. 94, 62 L.Ed.2d 61.

In the case at bar, the trial judge made the findings required by *Santiago* and *Medina-Herrera* and only then admitted the challenged testimony pursuant to rule 801(d)(2)(E). Even if the appellant's theory that a Hobbs Act victim cannot be a co-conspirator as to his own extortion is correct, it does not appear from the record that the court below relied on such a theory. In fact, the appellant in his reply brief stated that the trial judge thought that the ISAA executive committee members who testified might be chargeable with a conspiracy to extort money from the ISAA membership as a whole.[7] The Government had strenuously argued that the conspiracy to extort included a conspiracy to bribe. At the time the trial court relied on the co-conspirator exception, therefore, it was far from certain that no conspiracy involving the testifying ISAA members could legally exist. The requirements of *Santiago* and *Medina-Herrera* were therefore met and this case is consistent with *Gil*.

6. *E. g., United States v. Freeman*, 619 F.2d 1112, 1122 (5th Cir. 1980), cert. denied, 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981); *United States v. Gil*, 604 F.2d 546, 549 (7th Cir. 1979); *United States v. Barnes*, 604 F.2d 121, 156 (2d Cir. 1979), cert. denied, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980); *United States v. Scavo*, 593 F.2d 837, 845 n.4 (8th Cir. 1979); *United States v. Durland*, 575 F.2d 1306, 1310 (10th Cir. 1978); *United States v. Weiner*, 578 F.2d 757, 768 (9th Cir. 1978) (per curiam), cert. denied, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651; *United States v. Swainson*, 548 F.2d 657, 661 (6th Cir. 1977), cert. denied, 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255; *United States v. Trowery*, 542 F.2d 623, 626 (3d Cir. 1976) (per curiam), cert. denied, 429 U.S. 1104, 97 S.Ct. 1132, 51 L.Ed.2d 555 (1977).

7. Our review of the transcript leads us to conclude that insufficient evidence as to the required state of mind of the ISAA non-committee members exists to support this theory. That finding is not, however, dispositive because the ISAA committee members could have been charged with a conspiracy to bribe, *see infra*.

We find strong support for the theory advanced by the Government at trial for admissibility of the testimony. *United States v. Hathaway*, 534 F.2d 386 (1st Cir. 1976), *cert. denied*, 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79, involved charged violations of both the Hobbs Act, 18 U.S.C. § 1951 (1976), and the Travel Act, *id.* § 1952 (1976). The extortion scheme involved payments by Graham to Baptista which were "laundered" through Hathaway. Baptista and Hathaway were both charged pursuant to 18 U.S.C. §§ 1951 & 1952 (1976). Graham was not charged with any violation. He testified under a grant of immunity.

Some of Graham's testimony was received pursuant to rule 801(d)(2)(E). 534 F.2d at 401. Apparently his testimony concerned actions by the defendants that were allegedly violative of the Hobbs Act as well as the bribery aspects of the scheme, which were charged under the Travel Act. *Id.* at 390. There is no indication whatsoever in *Hathaway* that the jury was limited to considering this testimony only in relation to the Travel Act charges.

Appellant Kendall states in his brief that "the court specifically charged the jury that Graham's interstate travel and use of the mails would sustain a conviction under *the Travel Act*. The *Hathaway* case does not support the proposition that a payer may be regarded as a Hobbs Act co-conspirator for evidentiary purposes." Kendall's observation as to the jury charge is correct. Further, nothing in *Hathaway* suggests that Graham would have been charged, but for the grant of immunity, with a Hobbs Act violation. Whether he could be deemed a Hobbs Act co-conspirator, however, is irrelevant to the evidentiary question. Because Graham was a co-conspirator for evidentiary purposes under the Travel Act, his testimony was admissible against the defendants regardless of whether it constituted proof of the Hobbs Act or Travel Act violations.

In the case at bar, various ISAA members might have been charged with use of interstate transportation in aid of racketeering, 18 U.S.C. § 1961 (1976) (ITAR), or under the Travel Act, *id.* § 1952 (1976). They were not charged because they were granted immunity,[8] just as Graham was in *Hathaway*. *Hathaway* is distinguishable from the instant case only in that Kendall was not charged under either section 1952 or section 1961 whereas Baptista and Hathaway were charged pursuant to the Travel Act as well as the Hobbs Act. This distinction is significant only if it compels the conclusion that defendant Kendall had legally insufficient notice that his alleged participation in a bribery scheme, along with ISAA members, would lead to the admissibility of out-of-court declarations by the surety agents pursuant to rule 801(d)(2)(E).

Bribery and extortion under the Hobbs Act are not mutually exclusive.[9] In this case, the alleged conspiracy to bribe was clearly "intertwined" with the extortion conspiracy charged, *see United States v. Lyles*, 593 F.2d 182, 194 (2d Cir. 1979), *cert. denied*, 444 U.S. 847, 100 S.Ct. 94, 62 L.Ed.2d 61. Kendall therefore had at least as much notice that the Government might seek to introduce evidence of the conspiracy pursuant to rule 801(d)(2)(E) as the defendants in those cases admitting such evidence where no conspiracy was charged. *E. g., United States v. Gil*, 604 F.2d 546, 549 (7th Cir. 1979).

■ Kendall had legally sufficient notice that his participation in a bribery scheme with ISAA members might lead to the introduction of evidence concerning conversations among ISAA members pursuant to the joint venture exception. The fact that ISAA members might not be chargeable under the Hobbs Act is irrelevant. The

**8.** At least three ISAA members who testified, Harris, Lee, and Leslie, were granted immunity by the Government.

**9.** *E. g., United States v. Rabbit*, 583 F.2d 1014, 1026 (8th Cir. 1978); *United States v. Hatha-*

*way*, 534 F.2d 386, 393 (1st Cir. 1976), *cert. denied*, 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79; *United States v. Braasch*, 505 F.2d 139, 151 n.7 (7th Cir. 1974), *cert. denied*, 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975).

trial judge properly made the findings required by *Santiago* and *Medina-Herrera* and he did not err in admitting the testimony.

B. "In Furtherance of" the Conspiracy

■ Rule 801(d)(2)(E) requires that the declaration be made in furtherance of the conspiracy. The appellant contends that when Robert First told his brother, Delbert First, what had transpired at the March 5, 1979, and March 26, 1979, ISAA meetings, he was not furthering the conspiracy. The appellant characterizes the conversations between the brothers as "mere narrative" and likens the instant case to *United States v. Eubanks*, 591 F.2d 513 (9th Cir. 1979) (per curiam).

*Eubanks* involved a narcotics conspiracy. Gonzales, who was deceased at the time of trial, was a key member of that conspiracy. Gloria Baca, who had been Gonzales' common law wife, testified, and her testimony was admitted pursuant to the joint venture exception. The court found that the declarations made by Gonzales to Baca were nothing more "than conversations between conspirators that did nothing to advance the aims of the alleged conspiracy." *Id.* at 521. The court detailed some of the declarations compelling this conclusion. The statements pertained to events that had already occurred, such as that other conspirators had been unable to pick up heroin, and narrative as to what Gonzales himself planned to do. *Id.* at 520. There was no indication that Gonzales' actions were shaped by his talks with Baca. Similarly, there was no indication that Baca acted on behalf of the conspiracy as a result of these conversations.

In the case at bar, Delbert First and Robert First were in business together; therefore, they shared more than familial ties. After Robert told Delbert about the March 5, 1979, meeting, they actively solicited a donation for the legislative fund. Because this joint solicitation effort followed closely Robert's discussion of the meeting with his brother, that declaration can be viewed as being in furtherance of the conspiracy. It is readily distinguishable from the situation in *Eubanks*, in which Gonzales' conversations with Baca apparently prompted no action on her part nor any action by Gonzales that he had not already planned to take.

The Government cites no specific actions by either Delbert or Robert following the March 26, 1979, meeting that were arguably prompted by their discussion. Because the brothers had previously engaged in joint action furthering the goals of the conspiracy, however, there was a reasonable basis for the trial judge's conclusion that the evidence was admissible pursuant to rule 801(d)(2)(E). *See United States v. Inendino*, 604 F.2d 458, 461 (7th Cir. 1979) (per curiam), *cert. denied*, 449 U.S. 844, 101 S.Ct. 126, 66 L.Ed.2d 52 (1980); *United States v. Mackey*, 571 F.2d 376, 383 (7th Cir. 1978).

We conclude that the trial judge properly admitted Delbert First's testimony pursuant to the joint venture exception. We note additionally that, even if the judge below had admitted the evidence pertaining to the March 26, 1979, meeting without sufficient basis, Kendall was not prejudiced. Leslie, Lee, and Patchett all testified at trial concerning Kendall's involvement in that meeting. All three recalled discussion in Kendall's presence as to how the $9,000 previously raised had been spent, the possibility of further payments to secure favorable membership on the proposed legislative study commission, and Kendall's remarks concerning his influence with the Senate.

The appellant also contends that his right to confrontation was abrogated by admission of Delbert First's testimony because he could not cross-examine Robert First. This court has previously held that extrajudicial statements properly admissible under rule 801(d)(2)(E) do not violate a defendant's sixth amendment rights. *United States v. Papia*, 560 F.2d 827, 836 n.3 (7th Cir. 1977). The trial court therefore did not err in admitting the testimony of Delbert First.

C. "During the Course of" the Conspiracy

■ Kendall contends that Harris' testimony regarding a conversation with Cline

on May 10, 1979, was improperly admitted. He argues that the conspiracy alleged in the indictment had as its aim the securing of favorable action on specified bills during the Spring, 1979, legislative session. According to the appellant, the conspiracy necessarily ended on March 16, 1979, when the Senate passed House Bill 1490 without the amendment favored by the ISAA. Because the conspiracy ended before the May 10, 1979, conversation, testimony regarding the telephone call did not meet the requirement of rule 801(d)(2)(E) that the declaration be in furtherance of the conspiracy.

As discussed in more detail in Section IV, *infra*, we find that the judge below did not err in finding a single conspiracy that ended only when the ISAA refused to take any further action following the May 10, 1979, telephone call. This call therefore was made in order to further the conspiracy and the evidence was properly admitted pursuant to the joint venture exception.

III. Bill of Particulars

The appellant argues the trial judge abused his discretion in denying Kendall's motion for a bill of particulars identifying the known but unnamed co-conspirators. Kendall's reasoning is as follows. The indictment charged a conspiracy to extort, naming ISAA members as victims. There was no conspiracy to bribe charged in the indictment. Because it was a legal impossibility for the ISAA members to be co-conspirators as to the section 1951 charge, Kendall had no way of knowing the identity of these unnamed co-conspirators. Further, the appellant had no notice of the Government's legal theory through discovery pursuant to rule 16 of the Federal Rules of Criminal Procedure because the Government actively misled Kendall into thinking that testimony concerning conversations among ISAA members was intended only to show the victim's state of mind. Kendall urges that the trial court's abuse of discretion is obvious from a statement made by the judge below during trial that "the court can only assume that those individuals [the defendants] are well acquainted with all their associates and all the persons who participated in the conspiratorial undertaking." According to the appellant, this assumption is improper because it is inconsistent with the presumption of innocence.

 It is well established that a motion for a bill of particulars lies within the discretion of the trial court. *United States v. Barrett*, 505 F.2d 1091, 1106 (7th Cir. 1974), *cert. denied*, 421 U.S. 964, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975); *United States v. Cansler*, 419 F.2d 952, 954 (7th Cir. 1969), *cert. denied*, 397 U.S. 1029, 90 S.Ct. 1278, 25 L.Ed.2d 540 (1970). The denial of such a motion is reviewable only as an abuse of discretion. *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405.[10] The test for whether a bill of particulars is necessary is "whether the indictment sets forth the elements of the *offense charged* and sufficiently apprises the defendant of the *charges* to enable him to prepare for trial." *United States v. Roya*, 574 F.2d 386, 391 (7th Cir. 1978) (emphasis added), *cert. denied*, 439 U.S. 857, 99 S.Ct. 172, 58 L.Ed.2d 165.

In *Roya*, this court found that an indictment setting forth the elements of each offense charged, the time and place of the defendant's conduct that violated that offense, and citation to the statute or statutes violated satisfied the requirement. *Id.* Kendall does not complain that the indictment in the instant case failed to meet these criteria. His argument is essentially that he was prejudiced because he did not know the evidentiary theory on which the Government would rely. Kendall's reference to the district judge's statement, upon denial of his motion, suggests that we should find an abuse of discretion if the judge relied in part on an impermissible reason for his denial, even if the defendant was not prejudiced thereby.

---

10. In his brief the appellant cites decisions, *e. g., United States v. Hubbard*, 474 F.Supp. 64, 81 (D.D.C.1979), in which the district judge has granted a motion for a bill of particulars identifying known but unnamed co-conspirators. That trial judges have, in their discretion, granted such motions is not determinative of whether the judge in the case at bar abused his discretion in denying the motion.

We do not find this theory consistent with *Roya* but, in any event, we do not construe the remarks of the judge below as abrogating the presumption of innocence. We therefore must consider whether a defendant is precluded from adequately preparing for trial when he is not aware that the testimony of certain witnesses will likely be admitted pursuant to rule 801(d)(2)(E).

▮ It is established that "a defendant is not entitled to know all the *evidence* the government intends to produce, but only the *theory* of the government's case." *United States v. Giese*, 597 F.2d 1170, 1181 (9th Cir. 1979) (quoting *Yeargain v. United States*, 314 F.2d 881, 882 (9th Cir. 1963) (per curiam), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405); *United States v. Johnson*, 504 F.2d 622, 628 (7th Cir. 1974). In the instant case, as in *Giese*, the defendant in fact knew of the evidence on which the Government intended to rely. The tape recording of the March 5, 1979, meeting and the transcript thereof, for instance, had been provided Kendall during discovery. The only thing of which Kendall can complain is that he was unaware of the purpose for which the Government would seek to introduce these evidentiary materials.

We are not persuaded that a defendant who has *no* right to know the details of the evidence to be introduced by the Government does have a right to know for what purpose the Government will seek to have it admitted. The defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved. *United States v. Freeman*, 619 F.2d 1112, 1118 (5th Cir. 1980), *cert. denied*, 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981). Further, the appellant's contention is inconsistent with the established rule that the joint venture exception is available at trial even though no conspiracy is charged in the indictment. *E. g., United States v. Gil*, 604 F.2d 546, 549 (7th Cir. 1979). A defendant who is not charged with conspiracy does not know before trial that the Government will rely on rule 801(d)(2)(E); yet, courts have found that this does not prejudice the defendant.

▮ In this case, Kendall not only knew of the evidence on which the Government intended to rely. He also knew that the Government anticipated introducing evidence pursuant to the joint venture exception. The brief submitted by the Government prior to trial included a discussion of the relevant law pertaining to rule 801(d)(2)(E) and included reference to the *Hathaway* case which we have found persuasive in our disposition of the appellant's argument in Section II, *supra*. It is true that the Government's brief discusses the state of mind exception at greater length and more directly in relation to the admissibility of the conversations among ISAA members, whereas the discussion of rule 801(d)(2)(E) is somewhat more abstract. We find, however, that the brief as a whole, together with the evidentiary materials made available to Kendall and the indictment itself, more than satisfy the requirements of *Roya*.

We find therefore that the judge below acted well within his discretion in denying Kendall's motion for a bill of particulars.

IV. Instruction Regarding Multiple Conspiracies

Appellant Kendall also maintains that the district judge erred by refusing to instruct the jury as to the possibility of multiple conspiracies. The defendant argues that the charged conspiracy related only to efforts to influence the passage of bills before the legislature prior to March 16, 1979. When House Bill 1490 was passed by the Senate, without the amendment favored by the ISAA, on March 16, 1979, the charged conspiracy was terminated. The March 26, 1979, meeting was not therefore part of the conspiracy. Kendall contends that this later meeting might have been found to constitute a distinct conspiracy. The evidence linking Kendall to the March 26, 1979, meeting was allegedly stronger than that linking him to the earlier extortion conspiracy. If two separate conspiracies existed, the jury might have found him guilty of the later but not the earlier one. He was therefore prejudiced by the trial court's failure to instruct the jury regarding multiple conspiracies.

■■■■ If the possibility of multiple conspiracies exists, the trial judge must so instruct the jury. *See United States v. Varelli*, 407 F.2d 735 (7th Cir. 1969), *cert. denied*, 405 U.S. 1040, 92 S.Ct. 1311, 31 L.Ed.2d 581. The difficulty lies in determining whether such a possibility indeed exists in a given case. One must look to the nature of the agreement. *Id.* at 742. If the persons join together to further one common design or purpose, a single conspiracy exists. Multiple conspiracies, by contrast, exist when there are separate agreements to effectuate distinct purposes. Multiple conspiracies are more likely to be mistaken for a single conspiracy when one or two "core" defendants agree with other "non-core" defendants to accomplish a series of similar transactions. In such a case one could reasonably infer that the non-core defendants had agreed either to the overall scheme or merely to one distinct transaction. If a non-core defendant has not agreed to the scheme in its entirety, he should not be charged with all the actions contemplated by the core defendants. It is this determination that is left to the jury and is furthered by a jury instruction regarding multiple conspiracies.

In *Varelli*, for instance, the defendants had been convicted of a single conspiracy to hijack interstate shipments of merchandise. The evidence had shown one hijacking of Polaroid film and three hijackings of silver. Each transaction occurred on a different date. A panel of this court held that there was insufficient evidence from which a jury could find a single conspiracy, *id.* at 744, stating:

> While some of the parties who took part in the Polaroid hijacking were also involved in the silver hijackings, this alone is insufficient to support a finding of one overall continuous conspiracy. The conspirators in the Polaroid hijacking did not contemplate a series of hijackings in which all would partake. Rather, the Polaroid hijackings represented a single transaction with ·a single purpose. The fact that the object in both the Polaroid hijacking and silver hijackings were similar is insufficient to constitute an overall common conspiracy.

*Id.* (citation omitted). *See Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *Barnard v. United States*, 342 F.2d 309 (9th Cir. 1965), *cert. denied*, 382 U.S. 948, 86 S.Ct. 403, 15 L.Ed.2d 356.

Contrary to the appellant's interpretation, the Superseding Indictment was not clearly limited to the time during which the 101st General Assembly was considering Senate Bills 155 and 256 and House Bill 1490. Paragraph 13, Count I, of the indictment alleges a conspiracy "[f]rom on or about January 15, 1979, to the date of this Indictment." The purpose of the ISAA was broader than the scope of those particular bills; the association sought throughout its existence to effect favorable bail bond legislation. The March 26, 1979, meeting demonstrated that the defendants were continuing their efforts to further the overall scheme of obtaining favorable legislation. The temporary set-back to the conspiracy, caused by the passage of House Bill 1490 on March 16, 1979, without the amendment favored by ISAA, did not signal an end to the conspiracy. The discussion at the March 26, 1979, meeting concerning the $9,000 previously paid to Edwards furthers the conclusion that this was one continuing conspiracy.

■■■■ Considering the evidence in a light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), there is sufficient support for Kendall's involvement in the single conspiracy. There is no evidence that Kendall initially suggested illegal activity. At least as early as March 10, 1979, however, he received a $1,000 share of the illegal payment made to Edwards. He knew the source and purpose of the payment. At the March 26, 1979, meeting, Kendall was present when the previous payments made to Edwards were discussed. Assuming, arguendo, that Kendall did not become part of the conspiracy until he received the $1,000 kickback, "he is [nonetheless] chargeable with whatever was said or done previously by his co-conspirators." *United States v. Cerrito*, 413 F.2d 1270, 1272 (7th Cir. 1969), *cert. denied*, 369 U.S. 1004, 24 L.Ed.2d 495 (1970).

As this court has previously noted, "in nearly every conspiracy case the claim is made that a variance exists because multiple conspiracies were shown," *United States v. Abraham*, 541 F.2d 1234, 1238 (7th Cir. 1976), *cert. denied*, 429 U.S. 1102, 97 S.Ct. 1128, 51 L.Ed.2d 553 (1977). The trial judge is in the best position to determine whether the possibility of a variance exists, *id.* at 1239. We conclude that the judge below did not err in refusing to instruct the jury on multiple conspiracies.

## V. Severance

Kendall argues that the trial court erred in denying his motions for severance. The appellant claims specifically that he was prejudiced by the admission of impeachment evidence against Edwards and by admission of the recording of a telephone conversation between Edwards and Cline that took place on May 12, 1980. Before and during presentation of the impeachment evidence, the court instructed the jury that the testimony was not to be regarded in weighing the evidence against Kendall. Similarly, when the recording of the Cline/Edwards conversation was admitted, the court explicitly told the jury to disregard the conversation in relation to Kendall. At the close of the case, the judge again instructed the jury, stating:

> In this connection, you should keep in mind the cautionary instructions which the court has from time to time given you throughout the course of the trial regarding the application of evidence to one defendant and not the other.

Kendall claims that the interim instructions were insufficient to prevent prejudice against him. He further argues that, even if the interim instructions were adequate, the instructions at the close of the case were deficient because they failed to alert the jury specifically to what evidence was admitted only against Edwards.

 The decision as to whether a motion for severance should be granted lies within the discretion of the trial judge. *Opper v. United States*, 348 U.S. 84, 85, 75 S.Ct. 158, 160, 99 L.Ed. 101 (1954). It is subject to review only upon a showing of a clear abuse of discretion.[11]

 Severance need only be granted if the moving party demonstrates that a "fair trial cannot be had without severance, not merely that a separate trial offers a better chance for acquittal." *United States v. Holleman*, 575 F.2d 139, 142 (7th Cir. 1978); *accord, United States v. Papia*, 560 F.2d 827, 836 (7th Cir. 1977); *United States v. Abraham*, 541 F.2d 1234, 1240 (7th Cir. 1976). Because there is a strong public interest in having persons jointly indicted tried together, *United States v. Papia*, 560 F.2d 827, 837 (7th Cir. 1977), the ultimate question is whether the jury can follow the court's limiting instructions so as not to attribute evidence to a defendant against whom it is inadmissible. *Id.*

Appellant's arguments for severance are readily distinguishable from those that led the Second Circuit to conclude that severance should have been granted in *United States v. Kelly*, 349 F.2d 720 (2d Cir. 1965), *cert. denied*, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966). The Second Circuit court initially noted that "there would seem to have been nothing in the papers submitted or the arguments advanced when the trial commenced to justify a holding by us that the denial of Shuck's motion for a severance was an abuse of judicial discretion...." *Id.* at 759. The prejudice to Shuck became apparent only later when the trial extended over a longer period than the two to three month estimate originally given to the jurors. Shuck's name was not even mentioned during the first three months of the trial. During those months, however, there was a "slow but inexorable accumulation of evidence" against Shuck's co-defendants that "must have stamped them in the eyes of the jurors as unscrupulous swindlers of the first rate." *Id.* The jurors were irritated by the length of the trial, and the appellate court thought that

---

11. *United States v. Hedman*, 630 F.2d 1184, 1200 (7th Cir. 1980); *United States v. Grabiec*, 563 F.2d 313, 318 (7th Cir. 1977); *United States v. Papia*, 560 F.2d 827, 836 (7th Cir. 1977); *United States v. Tanner*, 471 F.2d 128, 137 (7th Cir. 1972), *cert. denied*, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 269 (1973).

they might have held Shuck, who had been ill, responsible. In contrast, the Kendall/Edwards trial lasted just over a month, and there was no evidence that the jury was antagonistic towards Kendall because of the trial's duration.

■ It is established that a disparity of incriminating evidence is not in itself sufficient to establish prejudice, *United States v. Hedman*, 630 F.2d 1184, 1200 (7th Cir. 1980); *United States v. Grabiec*, 563 F.2d 313, 318–19 (7th Cir. 1977). Although there was some disparity between the amount of evidence presented against Edwards and that relevant to Kendall, we do not find that severance was required.

The *Kelly* court noted that an alternative method of guarding against prejudice is to give interim limiting instructions, coupled with "positive and clear instructions at the close of the case," 349 F.2d at 757, to the jury. Kendall maintains that the court's instructions to the jury, particularly those given at the close of the case, failed to meet the *Kelly* standard. The purpose of requiring "positive and clear instructions" is to ensure that the jury is able to apply the court's directions, thereby eliminating prejudice to the defendant. *See United States v. Papia*, 560 F.2d 827, 837 (7th Cir. 1977). We must inquire therefore whether the instructions given by the judge below were sufficiently clear for the jury to follow, so that evidence relative only to Edwards would not be attributed to Kendall.

We find that the interim instructions were quite explicit. We are not willing to speculate that the jurors ignored these clear instructions. *See Opper v. United States*, 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954), *quoted in United States v. Papia*, 560 F.2d 827, 837 (7th Cir. 1977). Although Judge Steckler's instruction at the close of the case did not enumerate once again the evidence that was inadmissible against Kendall, the instruction referred specifically to the earlier detailed instructions. We do not find any likelihood of jury confusion. In our view, the record does not establish either that severance was required or that the instructions given by the court were ineffective to avoid prejudice to Kendall.

In light of our conclusions that the trial judge did not err in relying on rule 801(d)(2)(E), in denying the defendant's motion for a bill of particulars, in refusing to instruct the jury as to the possibility of multiple conspiracies, or in denying Kendall's motions for severance, the conviction of Francis B. Kendall is

AFFIRMED.