UNITED STATES of America, Plaintiff-Appellee,

v.

John B. SWAINSON, Defendant-Appellant.

No. 76–1702.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 3, 1976.

Decided Jan. 31, 1977.

Konrad D. Kohl, Farmington Hills, Mich.; Bruce T. Leitman, Bloomfield Hills, Mich., for defendant-appellant.

Philip Van Dam, U. S. Atty., Robert C. Ozer, C. Stanley Hunterton, Detroit Strike Force, Detroit, Mich., for plaintiff-appellee.

Before WEICK, PECK and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

The appellant, a justice of the Supreme Court of Michigan, was indicted by a grand jury of the Eastern District of Michigan. He and one Harvey Wish were charged in three counts with furtherance of an illegal scheme involving bribery by use of the mails and interstate facilities of communication. The appellant was also charged under 18 U.S.C. § 1621[1] with perjury before

---

1. § 1621. Perjury generally

Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition. or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States. June 25, 1948, c. 645, 62 Stat. 733; Oct. 3, 1964, Pub.L. 88–619, § 1, 78 Stat. 995.

the grand jury, based on his answers to questions concerning three occurrences involving him and Harvey Wish. In addition, Swainson, Wish and one Charles Goldfarb were charged with conspiring with each other and with an unindicted co-conspirator, John Joseph Whalen, to carry on the illegal activity of bribery.

The appellant and Harvey Wish were tried together. At the conclusion of all the evidence the district court granted appellant's motion for acquittal on the three charges involving use of the mails and interstate facilities, but submitted to the jury the conspiracy charge and the three perjury counts. The jury found Swainson not guilty of conspiracy and guilty on all three perjury counts. As to the co-defendant Wish, the court submitted one count related to use of mails and interstate facilities and the conspiracy charge. The jury found Wish guilty of conspiracy and not guilty of the substantive charge. Wish did not appeal.

This case is based on the allegation of the government that Harvey Wish, a professional bail bondsman, agreed with appellant for the payment of money in return for appellant's favorable action on behalf of Whalen, whose appeal of a larceny conviction was before the Supreme Court of Michigan. In the summer of 1972 Whalen reported to the FBI office in Detroit that Wish had proposed a bribery scheme involving appellant, and in subsequent meetings with Wish, Whalen carried a concealed microphone. It was testified at the trial that one or more FBI agents were stationed nearby when Wish and Whalen met, and that a number of their conversations were monitored and recorded on tapes. In addition, Swainson, Wish and Whalen were placed under FBI surveillance.

## ISSUES RELATED TO THE TAPES

Appellant objected in the district court to use of the tapes on the ground that they contained prejudicial hearsay evidence. Judge Rubin pointed out that Wish, Whalen and appellant were all charged as co-conspirators and that Wish and appellant were charged with joint actions in furtherance of an illegal scheme. Relying on the "co-conspirator exception" to the hearsay rule, the court permitted the tapes to be introduced and played for the jury, subject to an ultimate determination of whether there was independent evidence of a conspiracy or criminal joint venture. At the conclusion of the government's case the district court ruled that a prima facie case of conspiracy had been made out by independent evidence.

### A

■ On appeal it is argued that appellant's acquittal on the conspiracy charge requires reversal of his conviction for a new trial with the evidence contained on the tapes excluded. The appellant relies primarily on this court's decision in *United States v. Lucido*, 486 F.2d 868 (1973), to support his argument. In *Lucido* we held that where hearsay statements of an alleged co-conspirator are admitted ". . . acquittal on the conspiracy charge makes necessary inquiry into the possible prejudice that resulted from the introduction of this evidence." *Id.* at 869. In *United States v. Suchy*, 540 F.2d 254, 257 (6th Cir. 1976), the court specifically declined to declare "a per se rule of prejudice, requiring that wherever the Government is able to put hearsay before a jury solely because of an unproven conspiracy count, any conviction on substantive counts must be set aside."

The conviction in *Lucido* was reversed upon a finding that the record contained no independent evidence of an illegal joint venture. An examination of the transcript of appellant's trial reveals testimony by officers who conducted the surveillance of the suspected conspirators concerning meetings between Wish and Whalen followed by meetings between Wish and appellant; records of telephone conversations between Wish and appellant at times when the appeal of Whalen was being considered and reconsidered by the Michigan Supreme

Court; and the direct testimony of Whalen that he gave Wish $20,000 to be paid to Swainson for his efforts on behalf of Whalen. Without reciting the evidence in detail the court is satisfied that it was sufficient to establish, without consideration of any hearsay, a prima facie case of the existence of a conspiracy involving Wish, Whalen and the appellant.

**B**

▇ Appellant also argues that even if the independent evidence were otherwise sufficient to establish a prima facie case of conspiracy between Wish and Whalen, no conspiracy was legally possible because Whalen was working from the beginning as a government agent and, therefore, his activities were not illegal. The record does not support this argument. Whalen testified that he went to the FBI *after* Wish told him of the possibility of influencing appellant on behalf of Whalen. The government did not furnish the money which Whalen paid to Wish. Though he cooperated with the FBI as an informer, Whalen was not acting as a government agent in his dealings with Wish. By his testimony he agreed to the proposal that he give money to Wish for payment to appellant as an inducement to favorable consideration of his appeal. His role as an informer did not render his agreement with Wish something other than a criminal conspiracy. *United States v. DeSapio*, 435 F.2d 272, 282 (2d Cir. 1970), *cert. denied*, 402 U.S. 999, 91 S.Ct. 2170, 29 L.Ed.2d 166 (1971). Moreover, if Swainson agreed to accept illegal payments from Wish in return for help in the Whalen appeal, an illegal conspiracy between Wish and Swainson would have existed, regardless of the true role of Whalen.

**C**

▇ Appellant contends that his constitutional right of confrontation was violated by the fact that he could not require his co-defendant, Wish, to undergo cross-examination with respect to the statements recorded on the tapes. Appellant relies on *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In *Bruton* the Supreme Court held that one defendant in a joint trial was denied his Sixth Amendment right of confrontation by the admission in evidence of a confession of his co-defendant implicating both defendants in the crime for which they were being tried. The present case did not involve a confession by Wish. The argument based on *Bruton* falls with our determination that the recorded statements of Wish and Whalen were admissible as declarations of co-conspirators, as appellant appears to recognize on page 39 of his brief.

**D**

▇ More to the point is appellant's argument that he was entitled to be tried separately because of general prejudice. Though appellant knew of the contents of the tapes prior to trial, no motion for a severance was made pursuant to Rule 14, Fed.R.Crim.P. Such a motion must be made prior to trial. Rule 12(b)(5), Fed.R.Crim.P. The appellant argues that the effect of the recorded conversations was so overwhelmingly prejudicial as to require the district court to order a severance *sua sponte*. Appellant contended vigorously from the beginning of the trial that the tapes should have been excluded from evidence, but he never suggested to the district court that he should be granted a severance if they were admitted. In view of the basis on which the tapes were received in evidence and the fact that when the tapes were being played for the jury it was instructed ". . . that any conversations between Wish and Whalen at this point in the proceedings is not evidence against Defendant Swainson and is not to be considered by you as such . . . ," we find no prejudicial error in the failure of the district court to order a severance on its own motion.

**E**

▇ Finally, it is established that even where a conspiracy is not charged, declarations of partners in a criminal joint venture are admissible to prove the guilt of another partner. *United States v. Townes*, 512 F.2d

1057 (6th Cir.), *cert. denied,* 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1975); *United States v. Talbot,* 470 F.2d 158 (6th Cir. 1972); *United States v. Perna,* 491 F.2d 253 (6th Cir.), *cert. denied,* 417 U.S. 934, 94 S.Ct. 2646, 41 L.Ed.2d 237 (1974). As the court pointed out in *Talbot, supra,* 470 F.2d at 159, the required independent evidence of concerted action ". . . may be either direct or circumstantial." There was both direct and circumstantial evidence which was sufficient to make a prima facie case of joint illegal activity which would have made the tapes admissible if no conspiracy had been charged. The district court did not err in admitting the tapes.

## THE PERJURY CHARGES

As has been noted, appellant was acquitted of conspiracy and of substantive charges related to the alleged bribery scheme, but was convicted of perjury. He raises two separate issues with respect to the perjury conviction.

### A

Appellant contends there is not sufficient evidence in the record to sustain his conviction of perjury under counts 5 and 6 of the indictment. It is contended that the government did not satisfy the "two witness rule," which precludes perjury convictions based solely on one person's word against another's by requiring that charges of perjury under 18 U.S.C. § 1621 be established by the testimony of two witnesses or testimony of one witness corroborated by independent evidence. Transcripts of two appearances by appellant before the grand jury were received in evidence. At his first appearance appellant stated that he had no recollection of two telephone conversations with Harvey Wish involving the Whalen appeal. Two days later he told the grand jury that the two conversations had actually taken place. The testimony related to these two conversations was the basis of counts 5 and 6.

As will be discussed more fully, appellant's eventual admission that the two conversations had taken place and had con-

cerned the Whalen case came after he was aware that some of his activities had been the subject of FBI surveillance. There was independent corroborative evidence which supported the subsequent admission. When the alleged perjury relates to the state of mind of the accused, as in the present case ("I have no recollection"), proof of perjury must necessarily consist of proof of facts from which the jury may infer that the defendant must have known or remembered that which he denied knowing or remembering while under oath. Permitting perjury to be proven in this manner does not depart from the "spirit" of the two witness rule. *See United States v. Beach,* 296 F.2d 153, 155 (4th Cir. 1961). The jury could properly infer from all the evidence that appellant had wilfully failed to answer the questions concerning these conversations truthfully at his first appearance.

### B

Two other points should be made with respect to the sufficiency of the evidence of perjury. First, appellant does not contend that there was insufficient evidence to support his conviction under count 4 of the indictment. He received concurrent sentences under counts 4, 5 and 6. This court may decline to consider contentions of error with respect to counts the sentences for which run concurrently with the sentence on a valid count. *Barnes v. United States,* 412 U.S. 837, 848 n. 16, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *Ethridge v. United States,* 494 F.2d 351 (6th Cir.), *cert. denied,* 419 U.S. 1025, 95 S.Ct. 504, 42 L.Ed.2d 300 (1974).

In the second place, appellant presented evidence on his own behalf after the district court denied his motion for acquittal at the close of the government's case. This constituted a waiver of any objections to the court's denial of his motion. *United States v. Black,* 525 F.2d 668, 669 (6th Cir. 1975). Appellant did not renew his motion for acquittal at the conclusion of all the evidence, and the issue of sufficiency of the evidence can only be relied upon here under the "plain error" provision of Rule

52(b), Fed.R.Crim.P. Our examination of the record reveals no plain error with respect to the sufficiency of the evidence.

### C

Appellant maintains that the government erred in charging him with perjury under 18 U.S.C. § 1621 rather than under 18 U.S.C. § 1623. He argues that § 1621, which was enacted in 1948, deals with perjury generally, whereas § 1623, a 1970 enactment, is specifically limited to perjury in connection with court or grand jury proceedings. This he contends, indicates a congressional direction to utilize § 1623 for cases such as his which involve allegedly false statements to a grand jury. We note that Congress did not repeal § 1621 when it enacted § 1623, and did not specify that § 1623 became the exclusive basis for perjury prosecutions involving grand jury proceedings.

It is appellant's position that he would have been immune to prosecution under § 1623, because of the language of subsection (d)—

(d) Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed.

He relies upon his admissions at his second appearance before the grand jury as a bar to prosecution under § 1623, and claims there was an abuse of the prosecutor's discretion in proceeding under § 1621 in order to avoid appellant's complete defense under § 1623.

■ This issue was raised by appellant for the first time in a post-trial motion. Rule 12(b), Fed.R.Crim.P., provides that—

(1) Defenses and objections based on defects in the institution of the prosecution; or

(2) Defenses and objections based on defects in the indictment . . .

must be raised prior to trial. The purpose of this rule is to prevent unnecessary trials. Here all the facts concerning the two appearances of appellant before the grand jury were known long before the trial began and it was incumbent upon him to assert a timely claim that prosecution was barred by reason of his alleged recantation.

■ Even if this question were properly before us for review, it is clear from the record that § 1623(d) would not have precluded prosecution of appellant for perjury. When appellant made admissions concerning his conversations and transactions with Harvey Wish it had become "manifest that such falsity" had been exposed. His changed testimony came after he had heard transcripts of the testimony of two eyewitnesses to a previous transaction which he had categorically denied in his earlier testimony. *See United States v. Kahn*, 472 F.2d 272, 283–84 (2d Cir.), *cert. denied*, 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973).

### PRE–INDICTMENT DELAY

### A

■ Appellant contends his constitutional rights were infringed by the passage of time between completion of the government's investigation and return of the indictment under which he was tried. The Supreme Court has held that an accused who is not under arrest is protected from prejudice by reason of pre-indictment delay by the applicable statute of limitations, and that the Sixth Amendment's speedy trial provision has no application prior to actual arrest or formal indictment. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975). If a defendant can show actual substantial prejudice to his right to a fair trial and that the delay was deliberately created to gain an unfair tactical advantage for the government, he is entitled to dismissal for violation of Fifth Amendment due process rights. *Marion, supra*, 404 U.S. at 324, 92 S.Ct. 455; *United States v. Alred*, 513 F.2d 330 (6th Cir.), *cert. denied*, 423

U.S. 828, 96 S.Ct. 47, 46 L.Ed.2d 45 (1975); *United States v. Giacalone*, 477 F.2d 1273, 1277 (6th Cir. 1973).

Appellant has failed to show that any delay in presenting this case to the grand jury was intentional and designed to gain a tactical advantage. Furthermore, his claim of actual prejudice rests on the death before trial of a former chief justice of the Supreme Court of Michigan, the only witness who could have explained the way in which that court handled the Whalen appeal. This argument overlooks the fact that appellant was acquitted on the conspiracy charge and all substantive charges involving the alleged bribery scheme. The deceased witness could not possibly have furnished a defense to the perjury charges. The indictment was returned less than two months after appellant's grand jury appearances upon which the perjury charges were based. There simply was no unreasonable delay in seeking the indictment for perjury.

### B

If appellant is contending that his perjury indictment was a nullity because deliberate delay by the government in seeking an indictment rendered the proceedings of the grand jury before which he testified illegal, he is equally without support. The grand jury obviously was acting within its jurisdiction in investigating the charges that federal laws had been violated by the activities of Whalen, Wish and Swainson. Thus it was a "competent tribunal" within the meaning of 18 U.S.C. § 1621. *United States v. Williams*, 341 U.S. 58, 66, 71 S.Ct. 595, 95 L.Ed. 747 (1951). Therefore appellant was required either to answer the questions before the grand jury truthfully or decline to answer. He did not have the option of testifying falsely because he denied the right of the grand jury to question him long after the activities under investigation had transpired. In *Bryson v. United States*, 396 U.S. 64, 72, 90 S.Ct. 355, 360, 24 L.Ed.2d 264 (1961), the Supreme Court, holding that one who furnishes false information to the government in feigned compliance with a statutory requirement cannot defend against prosecution by challenging the validity of the requirement itself, concluded that—

> Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them. A citizen may decline to answer the question, or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood. (footnote omitted).

*See also United States v. Mandujano*, 425 U.S. 564, 574–577, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976).

### JURY MISCONDUCT

After the jury had begun deliberations counsel for the defendants notified the district court that two spectators at the trial had overheard the husband of a juror make derogatory remarks about the appellant. The jury was sequestered during the trial, and the court had permitted brief periods of visitation between jurors and members of their families during week-end recesses. There was no contact between jurors and non-jurors after the case was submitted and deliberations were begun. The jury was repeatedly admonished throughout the trial not to discuss the case with anyone prior to its submission. It was within the discretion of the trial judge to decide the degree of sequestration required, and to determine whether the information related by defense counsel required further investigation. *Tillman v. United States*, 406 F.2d 930, 938 (5th Cir.), *cert. denied*, 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969). On the record before us, we perceive no abuse of discretion in the district court's refusal to conduct a hearing into the question of possible juror misconduct.

### CONCLUSION

Throughout his brief and oral argument appellant has charged the government with unfairness in the prosecution of this case. Our careful examination of the record reveals no justification for these charges. The government made a full pre-trial disclosure of its case to the defendants and no claim of surprise has been made.

The principal contention of appellant is that the government poisoned the minds of the jury by introducing the taped conversations between Wish and Whalen. While these tapes were damaging, it must be remembered that appellant was acquitted on all charges related to bribery. Proof of the perjury charges was so intertwined with evidence relating to the other counts that it was clearly within the discretion of the prosecutor to try all the charges together. Rule 8(a), Fed.R.Crim.P. Furthermore, the tapes contained no information with respect to the activities which formed the basis for the perjury charge in count 4. That charge was proven by overwhelming evidence and involved a positive denial by appellant rather than a statement of no recollection.

The judgment of the district court is affirmed.