**UNITED STATES of America, Plaintiff,**

v.

**Theardis CARUTHERS, Defendant.**

Crim. A. No. 3:84–00018.

United States District Court,
M.D. Tennessee,
Nashville Division.

April 3, 1984.

John Williams, Asst. U.S. Atty., Nashville, Tenn., for plaintiff.

Donald Dawson, Asst. Public Defender, Nashville, Tenn., for defendant.

## MEMORANDUM OF FINDINGS, OPINION AND ORDER

NEESE, Senior District Judge, Sitting by Designation.

The defendant Mr. Theardis Caruthers was indicted herein on February 15, 1984 for an alleged violation on or about October 13, 1980 of the provisions of 18 U.S.C. § 1708. An evidentiary hearing was conducted on March 20, 1984 on his motion for a dismissal of the charge on the ground of unnecessary delay in presenting it to a grand jury. Constitution, Fifth Amendment, Due Process Clause.

Mr. Caruthers admitted pretrial having had in his possession in Nashville, within the Middle District of Tennessee, on October 13, 1980 check no. 102252 of United Cities Gas Company for $360.70 with knowledge that such check was among some 22 which had been stolen from the mail. Such payor reported such theft on October 22, 1980, and the investigation was assigned to Mr. John Lingle, an inspector of the Postal Service.

On November 3, 1980 Mr. Lingle interviewed two other persons who had been arrested while in possession of others of such checks. One of these persons advised that the other had obtained such checks from a person known to her as "The." She gave the investigator also a description of an automobile being operated by "The."; this vehicle was reported to have a temporary "drive-out license tag" on it.

Through such license-tag, Mr. Lingle learned on November 4, 1980 that a dealer in motor-vehicles had sold that described car to Mr. Theardis ("The.") Caruthers. It was learned also that Mr. Caruthers worked as a cleaner in a building occupied by the aforenamed payor and was on duty there on October 13, 1980. Two days afterward, Mr. Lingle obtained from the defendant exemplars of the genuine handwriting of Mr. Caruthers and of his palm-prints. These were forwarded to a Postal Service laboratory for analyses. Mr. Lingle received a report thereon on February 11, 1981 that it was the expert-opinion of such analysts that the handwriting of the aforedescribed check was that of the defendant.

Mr. Lingle made his report of the foregoing to an assistant United States attorney of this District. He was directed by such prosecuting attorney to contact the defendant for any possible explanation of his (the defendant's) handwriting's being on such check. Mr. Lingle made a diligent effort thereafter to locate Mr. Caruthers, but he was unsuccessful in his effort. When it was determined by the postal investigative service that the subject-theft was of an external rather than of a (postal) internal nature, Mr. Lingle was withdrawn from the investigation, before Mr. Caruthers was located.

The investigation was then assumed by Mr. David R. Hill, another postal inspector on August 5, 1982. Mr. Hill had been and was engaged at the time in investigations of an armed robbery and a bombing of respective postal installations which were given precedence over the Caruthers-investigation. Mr. Hill located Mr. Caruthers' sister on December 1, 1982, but his efforts to contact Mr. Caruthers continued to be unsuccessful.

Mr. Hill filed with the prosecuting attorney his "case-report" on February 14, 1983 and was advised again to contact Mr. Caruthers and recontact other potential witnesses and obtain written statements. Through his mother, Mr. Caruthers was contacted by Mr. Hill on September 27, 1983. Two days afterward, Mr. Caruthers underwent polygraph-testing which did not serve to "clear" him of suspicion. Mr. Hill took a final statement from Mr. Caruthers on January 20, 1984, and the matter was presented to a grand jury; the indictment herein ensued.

This Court FOUND orally from the foregoing facts and circumstances that the delay in presenting the charge herein to a

grand jury was because the prosecuting attorney insisted upon a continuance of its investigation until he was satisfied he would be able to prove the defendant guilty of the charge beyond a reasonable doubt; that the charge was presented to a grand jury soon after he became so satisfied; that, therefore, the delay in presenting the charge herein to a grand jury was not unreasonable; and ordered that the motion thereunder be overruled. Those were correct findings and in order:

As stated for the Supreme Court by Justice Marshall, *inter alia:*

> * * * [P]rosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt. To impose such a duty "would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself." [Citation omitted.] From the perspective of potential defendants, requiring prosecutions to commence when probable cause is established is undesirable because it would increase the likelihood of unwarranted charges being filed, and would add to the time during which defendants stand accused but untried. [Footnote reference omitted.] These costs are by no means insubstantial since, * * * a formal accusation may "interfere with the defendant's liberty, . . . disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in his family and his friends." [Citation omitted.] * * * [N]o one's interests would be well served by compelling prosecutors to initiate prosecutions as soon as they are legally entitled to do so. [Footnote reference omitted.] † * *

*United States v. Lovasco,* 431 U.S. 783, 791, 792, 97 S.Ct. 2044, 2049–2050[7], 52 L.Ed.2d 752 (1977), *reh. den.,* 434 U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977).

From the foregoing, it is evident that Mr. Caruthers was not deprived of his constitutional right to due process of law and a fair trial: the only indication of prejudice from the delay claimed by the defendant is the current absence of a witness, Mr. Ben Benshaw, who is in escape-status from a Tennessee prison and has been for more than a year. The defendant claims that Mr. Benshaw might, if available for trial, give testimony exculpatory of him (the defendant) as to his possession of the above described check.

Assuming only *arguendo* that Mr. Benshaw would indeed exculpate the defendant and that actual prejudice from preindictment delay has occurred, this would serve to assert his *claim of* a due-process violation; however, even actual prejudice would not require a dismissal of the indictment for that reason: as stated, the reasons for delay herein were reasonable, and there was no proof that such delay was in the nature of an intentional device utilized by the prosecution to gain a tactical advantage.

> " * * * Dismissal for pre-indictment delay is warranted only when the defendant shows substantial prejudice to his right to a fair trial and that the delay was an intentional device by the government to gain a tactical advantage. * * "

*United States v. Brown,* 667 F.2d 566, 568[3] (6th Cir.1982), citing *United States v. Marion,* 404 U.S. 307, 325, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971), and *United States v. Lovasco, supra; accord: United States v. Roberts,* 548 F.2d 665, 668[4] (6th Cir.1977), *cert. den.,* 431 U.S. 931, 97 S.Ct. 2636, 53 L.Ed.2d 246 (1977); *United States v. Swainson,* 548 F.2d 657, 663[4] (6th Cir. 1977), *cert. den.,* 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977).