911 F.2d 734
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arthur W. BYRD, Defendant-Appellant.
 No. 89-6448.
 United States Court of Appeals, Sixth Circuit.
 Aug. 13, 1990.
 
 Before MERRITT, Chief Circuit Judge, and KEITH and NATHANIEL R. JONES, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendant Arthur Wayne Byrd ("Byrd")[1] appeals from the October 30, 1989 judgment and commitment order convicting him, pursuant to a jury verdict, of conspiracy, wire fraud and interstate transportation of stolen goods. Byrd contends that the district court erred in: (1) using his prior Louisiana convictions to enhance his sentence; (2) allowing two identical counts to go the jury; and (3) allowing his co-conspirators' actions and statements to be introduced as evidence. For the reasons stated below, we AFFIRM.
 
 I.
 
 2
 This action stems from the Federal Bureau of Investigation's ("FBI") discovery of a scheme used by Byrd and co-defendant Jerome Arthur Whittington ("Whittington") to earn substantial sums of money by selling fraudulently obtained aviation engines. In January 1989, Harold "Nick" Carter ("Carter"), the owner of Carter Aviation Supply, Inc.,[2] received several phone calls from Karl Masson ("Masson"). Masson inquired about the price and availability of various helicopter engines. Subsequently, the FBI identified Masson as Whittington. During these phone conversations, Whittington represented himself as an agent of the United States government seeking to buy helicopter or airplane engines on behalf of a government agency. Whittington contracted with other buyers to sell them the engines he had fraudulently obtained from Carter and other sellers of aviation engines. Whittington and Byrd perpetrated the same scheme against several other aviation suppliers.[3] Byrd, using a variety of aliases, took possession of the fraudulently obtained engine, delivered it to the purchaser, and received the proceeds from the sale. Whittington and Byrd never gave Carter, or the other sellers of aviation engines, the proceeds from their sales. Both Byrd and Whittington used various false driver's licenses and birth certificates to further their fraudulent activities.
 
 
 3
 Whittington and Byrd made the following fraudulent transactions with Carter:
 
 
 4
 (1) On January 17, 1989, Carter shipped a Lycoming helicopter engine from Elizabethton, Tennessee to Fort Collins, Colorado. On January 23, 1989, Donald Hart ("Hart") received the engine and delivered it to Century Helicopters in Fort Collins. On the same day, Hart received a check from Century Helicopters for $7,000.00. Subsequent investigation revealed the engine to be worth $19,980.00 and identified Hart as Byrd.
 
 
 5
 (2) On January 18, 1989, Carter shipped a Lycoming helicopter engine from Elizabethton, Tennessee to Saluda, South Carolina. On January 20, 1989, Byrd received the engine and delivered it to South Carolina Helicopters in Saluda. On the same day, Byrd received $6,500.00 for the engine from South Carolina Helicopters. Subsequent investigation revealed the engine to be worth $19,980.00.
 
 
 6
 (3) On January 25, 1989, Carter shipped an airplane engine from Elizabethton, Tennessee to Seattle, Washington. After receiving the engine, Byrd delivered it to Jerry Myers Aviation near Seattle. On the same day, Byrd received $8,000.00 from Jerry Myers for the engine. Subsequent investigation revealed the engine to be worth $19,000.00.
 
 
 7
 On January 28, 1989, FBI agents arrested Byrd in the Dallas-Fort Worth airport.[4] At the time of his arrest, Byrd identified himself as Donald Hart and refused to cooperate with the agents. Byrd was transported to the Eastern District of Tennessee and interviewed by several FBI agents. Byrd maintained his innocence, but implicated Whittington in the scheme. Byrd was detained without bond.
 
 
 8
 On February 15, 1989, the Grand Jury returned a three-count indictment against Byrd charging him with transporting stolen goods, in violation of 18 U.S.C. Sec. 2314. On April 25, 1989, a seven-count superseding indictment charged Byrd and his co-defendants[5] with: conspiracy, in violation of 18 U.S.C. Sec. 371; wire fraud, in violation of 18 U.S.C. Sec. 1343; and interstate transportation of stolen property, in violation of 18 U.S.C. Sec. 2314.
 
 
 9
 On June 19, 1989, Byrd had a separate jury trial. After a four-day trial, the jury convicted him on all seven counts. The court denied Byrd's motion for a new trial on August 17, 1989. On October 30, 1989, Byrd was sentenced to twenty-seven months imprisonment on each count to run concurrently, three years of supervised release and $4,000.00 restitution. Byrd filed a timely notice of appeal on November 8, 1989.
 
 II.
 
 10
 Byrd contends that the district court erred in sentencing him because it relied on two prior convictions which he characterizes as facially invalid. He argues that the two convictions, both from Bossier City, Louisiana, do not justify a valid enhancement because at the time of those sentencings, he was not advised of his constitutional rights. We disagree. In reviewing a sentencing decision under the Federal Sentencing Guidelines, we apply a clearly erroneous standard: "We must 'give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous.' " United States v. Perez, 871 F.2d 45, 47 (6th Cir.1989) (citations omitted). A finding is deemed clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Archer v. Macomb County Bank, 853 F.2d 497, 499 (6th Cir.1988) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573 (1985)).
 
 
 11
 Byrd contends that at the time of the two Louisiana convictions, he was not advised of his constitutional rights. He relies on Boykin v. Alabama, 395 U.S. 238, 242 (1969) for the proposition that all of the constitutional protections that are involved when a guilty plea is entered cannot be presumed from a silent record. In Boykin, the record was silent as to whether the defendant had entered a constitutionally valid guilty plea to common law robbery which, in Alabama, was punishable by death. Id. at 239.
 
 
 12
 Here, the state court record before the district court was not silent. The district court carefully reviewed the certified copies of Byrd's contested prior convictions which indicated that he was represented by counsel at both proceedings. Furthermore, at the sentencing proceedings, the district court conducted a thorough hearing into Byrd's objections to using both convictions to increase his criminal history category. It was not until the hearing was concluded, that the district court determined the probation report was accurate, the prior convictions were properly charged, and the one-point increase in the criminal history category was properly taken against Byrd.
 
 
 13
 Given the information that was available to the district court concerning the prior convictions and the thorough investigation conducted by the district court, we fail to find that the district court's enhancement of Byrd's sentence was clearly erroneous.
 
 III.
 
 14
 Byrd maintains that the district court erred in finding him guilty on counts two and three of the superceding indictment, because those counts allege the same violation and are identical. Although the indictment does have a duplicative count, any resulting error from sentencing Byrd on the invalid count would be harmless.
 
 
 15
 Federal Rule of Criminal Procedure 52(a) provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Fed.R.Crim.Proc. 52(a). The concurrent sentence doctrine follows from Rule 52(a) and provides that where these is a conviction on multiple counts, one of which is invalid, and the sentences are to be served concurrently, there is no prejudice as long as one of the other counts validly supports the sentence imposed. See e.g., United States v. Grunsfeld, 558 F.2d 1231, 1242 (6th Cir.1977) (where defendant was convicted on five counts and sentenced to four years on each count, to be served concurrently, sentence was not reviewed when one of the counts was deemed invalid because there was no meaningful collateral effect from the conviction on the invalid count), cert. denied, 434 U.S. 872 (1977); United States v. Swainson, 548 F.2d 657, 662 (6th Cir.1976) (where sentence on a valid count runs concurrently with sentence on invalid count, courts may decline to consider contentions of error), cert. denied, 431 U.S. 937 (1977); accord United States v. Crockett, 514 F.2d 64, 74 (5th Cir.1975) (under the concurrent sentence doctrine, where defendant was convicted and serving concurrent five-year sentences on three counts, any error with respect to one count was harmless and not reviewable).
 
 
 16
 Byrd was sentenced to twenty-seven months on each of the seven counts in the superseding indictment, with each sentence to run concurrently. Byrd also received three years supervised release on each of the seven counts; each count to run concurrently. Given the concurrent sentence doctrine, any resulting error from his conviction on two duplicative counts would be harmless, because the sentence imposed is validly supported by the other counts. We, therefore, find that any error resulting from Byrd being charged and convicted on counts two and three of the superseding indictment is harmless and does not warrant review.
 
 IV.
 
 17
 Byrd argues that the district court erred in allowing the government to introduce, through its witnesses, hearsay evidence of his co-conspirators' statements and actions. Federal Rule of Evidence 801(d)(2)(E) provides an exception for the introduction of such hearsay evidence; nevertheless, Byrd contends that the requirements of Rule 801(d)(2)(E) is not met here, and that the evidence introduced was prejudicial. We disagree.
 
 
 18
 Rule 801(d)(2)(E) provides that the government may introduce hearsay evidence of co-conspirators' statements upon a showing by a preponderance of the evidence that: a conspiracy existed; the defendant against whom the hearsay evidence is offered was a member of that conspiracy; and the hearsay statement was made in the furtherance of that conspiracy. See United States v. Holloway, 731 F.2d 378, 381 (6th Cir.), cert. denied, 469 U.S. 1021 (1984); United States v. Enright, 579 F.2d 980, 986 (6th Cir.1978).[6] The decision whether to admit such hearsay will not be reversed absent a showing of abuse of discretion. United States v. Phillips, No. 89-5485 (6th Cir. Oct. 17, 1989); United States v. Rios, 842 F.2d 868, 872 (6th Cir.1988), cert. denied --- U.S. ----, 109 S.Ct. 840 (1989).
 
 
 19
 Here, the record indicates that the district court did not abuse its discretion. Twenty-seven of the government's twenty-eight witnesses testified to the actions and statements Byrd made in furtherance of the conspiracy. A preponderance of the non-hearsay evidence shows that there was a conspiracy to transport stolen goods and to commit fraud by wire; therefore, the government met its burden of proof.
 
 V.
 
 20
 We find that the district court properly used Byrd's Louisiana convictions to enhance his sentence, and did not err in introducing his co-conspirators' statements into evidence. Furthermore, given the concurrent sentence doctrine, the fact that Counts II and III of the superseding indictment were identical was merely harmless error and did not affect his substantive rights. For the foregoing reasons, we AFFIRM the judgment of the Honorable Thomas G. Hull, United States District Judge for the Eastern District of Tennessee.
 
 
 
 [1]
 Defendant Arthur Wayne Byrd is also know as: William Arthur Byrd; Donald Jerome Hart; Don Hart; John Hessler and John Lauv
 
 
 [2]
 Carter Aviation Supply, Inc. is a business, located in Elizabethton, Tennessee, which purchases and sells aviation engines
 
 
 [3]
 Other suppliers that were taken by this scheme include: Heli-Aero, Ducor, California; Weldon's Maintenance Repair, Inc., Oakland, California; and B & B Aircraft Sales, Atlanta, Georgia
 
 
 [4]
 At the time of his arrest, Byrd was awaiting a shipment of aviation parts from Helio-Aero in Ducor, California. This transaction, like the others, had been fraudulently arranged by Whittington
 
 
 [5]
 Diane Armstrong participated in the scheme, arranging the delivery of the engines after shipment
 
 
 [6]
 In United States v. Vinson, 606 F.2d 149, 152 (6th Cir.1979), we identified three methods to assist the district court in making its determination whether to admit hearsay evidence under Rule 801(d)(2)(E): (1) conduct a mini-hearing where the court hears the government's conspiracy proof without a jury and then makes a decision; (2) require the government to meet its burden by producing non-hearsay evidence of the existence of a conspiracy prior to making the required finding; or (3) conditionally admit the hearsay statements subject to a later demonstration of their admissibility by a preponderance of the evidence under the Enright standard. Here, the record below indicates that the district court applied the third method. Joint Appendix at ---. United States v. Byrd, No. CR-2-89-08